IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SERTA SIMMONS BEDDING, LLC and DREAMWELL, LTD.<br><br>         Plaintiffs,<br><br>         v.<br><br>CASPER SLEEP INC.<br><br>         Defendant. | CIVIL ACTION NO. 1:17-cv-07468 |

**DEFENDANT CASPER SLEEP INC.'S MEMORANDUM OF LAW IN SUPPORT OF CASPER'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF THE ASSERTED PRODUCT CLAIMS**

## TABLE OF CONTENTS

**Page**

I. Introduction ................................................................................................................. 1

II. Legal Standards ........................................................................................................ 2

III. Background .............................................................................................................. 4

IV. Argument ................................................................................................................. 5

    A.   GB '433 Anticipates and/or Renders Obvious All Asserted Product Claims ............... 6

        1.   GB '433 Discloses Inserts "Affixed" in the Channels ........................................ 6

        2.   GB '433 Discloses Inserts that "Reinforce" the Body ........................................ 7

    B.   Regan Anticipates and/or Renders Obvious All Asserted Product Claims Under Plaintiffs Interpretation of the Claims ................................................................. 8

        1.   Regan Discloses Inserts "Affixed" in the Channels ........................................... 9

        2.   Regan Discloses Inserts that "Reinforce" the Body ......................................... 10

    C.   Antinori Anticipates and/or Renders Obvious All Asserted Product Claims Under Plaintiffs' Interpretation of the Claims ............................................................. 10

        1.   Antinori Discloses Inserts within "Channels" .................................................. 11

        2.   Antinori Discloses an Insert "Affixed" in a Channel ....................................... 12

        3.   Antinori Discloses an Insert Affixed "Within" a Channel ............................... 12

        4.   Antinori Discloses a "Plurality of Inserts" ....................................................... 13

V. Conclusion .............................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
    239 F.3d 1343 (Fed. Cir. 2001) ...........................................................................................8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .............................................................................................................2

*King Pharm., Inc. v. Eon Labs, Inc.*,
    616 F.3d 1267 (Fed. Cir. 2010) ...........................................................................................3

*KSR Int'l Co. v. Teleflex, Inc.*,
    127 S. Ct. 1727 (2007) ........................................................................................................3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .............................................................................................................2

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011) ...............................................................................................................2

*Newell Cos., Inc. v. Kenney Mfg. Co.*,
    864 F.2d 757 (Fed. Cir. 1988) .............................................................................................3

*In re Paulsen*,
    30 F.3d 1475 (Fed. Cir. 1994) .............................................................................................3

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*,
    225 F.3d 1349 (Fed. Cir. 2000) ...........................................................................................2

*Spectrum Pharm., Inc. v. Sandoz, Inc.*,
    802 F.3d 1326 (Fed. Cir. 2016) ...........................................................................................3

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013) ...........................................................................................3

**Statutes**

35 U.S.C. § 102(b) .......................................................................................................................3

35 U.S.C. § 103 ............................................................................................................................3

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................................2

**TABLE OF ABBREVIATIONS**

| Abbreviation | Document |
|---|---|
| '620 FH | File history for U.S. Patent No. 9,549,620 |
| '763 patent | U.S. Patent No. 7,424,763 (D.I. 1-1) |
| Antinori | U.S. Patent No. 6,223,371 (D.I. 44-41) |
| CC Order | Court's Order on Claim Construction, dated January 25, 2018 (D.I. 81) |
| Ex. | Exhibit to the Declaration of Christine Ranney, filed concurrently herewith |
| GB '433 | Great Britain Patent Specification No. 1483433 (D.I. 44-37) |
| Pls. PI Reply Br. | Plaintiffs' Reply in Further Support of Plaintiffs' Motion for Preliminary Injunction (D.I. 51) |
| Regan | U.S. Patent No. 4,161,045 (D.I. 44-38) |
| SOF | Statement of Material Facts, submitted herewith |

## TABLE OF EXHIBITS

| Exhibit | Document |
|---|---|
| I | Excerpts of the file history for U.S. Patent No. 9,549,620 |

## TABLE OF APPENDICES

| Appendix | Document |
|---|---|
| A | Claim Chart for GB '433 |
| B | Claim Chart for Regan |
| C | Claim Chart for Antinori |

Defendant Casper Sleep Inc. ("Casper") respectfully moves for summary judgment that the asserted product claims (claims 1 and 4–7 of U.S. Patent No. 7,424,763 ("the '763 patent")), are invalid as anticipated by and/or obvious in light of any one or all of three prior art references: Great Britain Patent Specification No. 1483433 ("GB '433"); U.S. Patent No. 4,161,045 ("Regan"); and U.S. Patent No. 6,223,371 ("Antinori").

## I. Introduction

Plaintiffs Serta Simmons Bedding, LLC and Dreamwell, Ltd. (collectively, "Plaintiffs") accuse Casper of infringing product claims covering a mattress with specific features, including "channels" with "inserts" for reinforcing the mattress. But each and every one of the asserted product claims is invalid, because every limitation of every one of the claims is found in the prior art. Indeed, *numerous* prior art references disclose a mattress with the *exact* features recited in these claims. Casper's expert, Mr. Bernhard Kuchel, for example, showed how at least *nine* prior art patents anticipate and/or render obvious *each and every* limitation of the asserted mattress claims. This is not surprising given that Plaintiffs have admitted that every one of these claimed features was known in the prior art before the alleged invention in 2002. In short, there is no genuine dispute that, long before the asserted patents, the claimed mattress was well known and described throughout the prior art.

Here, for purposes of summary judgment, Casper focuses on three references that each describe the exact features recited in the asserted mattress claims: the GB '433 application from 1977; the Regan patent from 1979; and the Antinori patent from 2001. Claim charts showing how each of these references discloses each and every limitation of the asserted product claims are attached as Appendices A–C. Notably, *none* of these references was considered by the examiner during prosecution of Plaintiffs' asserted patents and, in fact, Plaintiffs were aware of two of the references (Regan and Antinori) but withheld them from the Patent Office. Casper raised these

1

same references in the preliminary injunction proceedings and, as shown below, Plaintiffs' rebuttal arguments are utterly frivolous and disproved on the faces of the prior art references themselves. Plaintiffs have no good-faith arguments that the prior art does not anticipate and/or render obvious the asserted mattress claims.

Because there are no material facts in dispute and the claims as construed compel a finding of invalidity, Casper respectfully requests that the Court grant summary judgment of invalidity of the asserted mattress claims.[1]

## II. Legal Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). A party challenging patent validity has the burden to prove its case with clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Where the "'clear and convincing' evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." *Anderson*, 477 U.S. at 255. Although raising prior art never considered by the Patent Office (as Casper does here) "does not change the presumption of validity, the alleged infringer's burden may be more easily carried because of this additional reference." *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355–56 (Fed. Cir. 2000).

---

[1] The other claims asserted by Plaintiffs, which are directed to a method of manufacturing a mattress rather than to the mattress itself, are also invalid or not infringed, as explained in Casper's separate motion for summary judgment regarding the method claims.

An invention is anticipated under 35 U.S.C. § 102(b) if it "was . . . described in a printed publication in this . . . country . . . more than one year prior to the date of application for patent in the United States." "A rejection for anticipation under section 102 requires that each and every limitation of the claimed invention be disclosed in a single prior art reference. In addition, the reference must be enabling and describe the applicant's claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention." *In re Paulsen*, 30 F.3d 1475, 1479 (Fed. Cir. 1994).

Under 35 U.S.C. § 103, "[a] patent claim is invalid as obvious if an alleged infringer proves that the differences between the claims and the prior art are such that 'the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.'" *Spectrum Pharm., Inc. v. Sandoz, Inc.*, 802 F.3d 1326, 1333 (Fed. Cir. 2016) (quoting section 103); *see also King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1274 (Fed. Cir. 2010). "Obviousness is ultimately a conclusion of law premised on underlying findings of fact, including the scope and content of the prior art, the differences between the claimed invention and the prior art, and the level of ordinary skill in the pertinent art." *Spectrum*, 802 F.3d at 1333 (citations omitted); *see also KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1734, 1746 (2007).

Both anticipation and obviousness are appropriate for resolution at summary judgment. "Although anticipation is a question of fact, a district court may, on summary judgment, invalidate a patent claim as anticipated by a prior art reference if the patentee does not identify a genuine issue of material fact to avoid summary judgment." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1324 (Fed. Cir. 2013). "[W]here the ultimate legal conclusion of obviousness is disputed, but not the underlying facts, there is no issue of fact requiring a trial." *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 763 (Fed. Cir. 1988); *see also KSR*, 127 S. Ct. at 1745–46.

### III. Background

The asserted '763 patent relates to a foam mattress with inserts affixed in channels to vary the support characteristics of the mattress—that is, to allow the mattress to be firmer in some regions and less firm in others. *See* '763 patent (D.I. 1-1) at 1:33–35. In particular, the asserted mattress claims cover a mattress with the features such as:

- "a body made of foam";
- "a plurality of channels extending into the body perpendicularly therefrom";
- "a plurality of inserts, each insert . . . affixed within one of the plurality of channels"; and
- "each insert reinforcing the body."

But Plaintiffs, by their own admissions, did not invent the first such mattress.

During discovery, Plaintiffs designated the sole named inventor, Mr. Richard Gladney, as its corporate representative with respect to "[t]he alleged points of novelty, and all advantages, of each Asserted Claim over the prior art." Mr. Gladney was asked about each and every claim limitation and whether it was something he was the first to invent. *See generally* SOF ¶ 1 (Gladney testimony). Of all the claim limitations, Mr. Gladney said he invented only one: he was, in his view, "the first person to invent a foam mattress with *channels*." SOF ¶ 1 (Gladney testimony) (emphasis added).[2] By his own admission, others had already invented foam mattresses with cutouts and inserts that reinforce the body. SOF ¶ 1 (Gladney testimony). The only difference was that, according to Mr. Gladney, the inserts in the prior art were not affixed in "channels"; that is, the inserts in the prior art would have been affixed in recesses or cutouts that were of a different shape. SOF ¶ 1 (Gladney testimony).

---

[2] This Court construed "channel" as "a long, narrow groove." In the deposition, Mr. Gladney was informed of the Court's construction of "channel" before being asked about what he invented in the claims. SOF ¶ 2 (Gladney testimony).

4

But Plaintiffs have already admitted that using inserts in channels was not new. Specifically, after Plaintiffs convinced the Patent Office to grant the '763 patent that Plaintiffs now assert here, with its claims to "channels," the Plaintiffs filed a new continuation application and tried to obtain even more claims based on Mr. Gladney's alleged invention. *See* '620 FH (Ex. I) 12/24/2014 Application at 10.[3] This time, however, the Patent Office found and identified GB '433 as invalidating prior art, and explained that it disclosed channels with spring inserts in a foam mattress body. *E.g.*, '620 FH (Ex. I) 9/11/2015 Office Action at 5; '620 FH (Ex. I) 2/23/2016 Office Action at 2. In response to these rejections, Plaintiffs *admitted* that the GB '433 prior art discloses channels with spring inserts in a foam body, writing:

> GB discloses ***multiple parallel channels*** that extend completely across the width or length of the foam body. The multiple channels are spaced apart at defined intervals, wherein ***a single row of springs is disposed within a channel***.

'620 FH (Ex. I) 5/16/2016 Amendment at 4–5 (emphases added). Based on Plaintiffs' admissions about what was known in the prior art, there can hardly be a dispute that the asserted mattress claims are invalid, as there is nothing novel in them. Specific prior art references disclosing all elements of the asserted mattress claims are described below.

## IV. Argument

The prior art is replete with examples of mattresses with inserts affixed into channels in *exactly* the same way as disclosed in the asserted patents. Though there are nearly a dozen, this motion focuses on three such references: the GB '433 application; the Regan patent; and the Antinori patent. Plaintiffs' arguments that these references do not disclose the elements of the claims are utterly meritless. To prevail, Casper need only show that *one* of these three prior art references discloses all limitations of the asserted product claims, or that the claims would have

---

[3] That application later issued as U.S. Patent No. 9,549,620, which is not asserted in this litigation.

been obvious over the reference. Because the undisputed facts demonstrate that each of these three references discloses and renders obvious each and every limitation of the asserted product claims, Casper is entitled to summary judgment of invalidity for those claims.

### A. GB '433 Anticipates and/or Renders Obvious All Asserted Product Claims

GB '433 anticipates the asserted product claims because it clearly discloses each and every limitation of the claims. The reference, published in 1977, describes a foam mattress body (colored blue in the figure below) with "a plurality of cut-out parallel channels" (colored in red) "extending over . . . the entire width of the body," with springs that are then "inserted into the channels in the foam" for reinforcement. SOF ¶ 3 (quoting GB '433). Included as Appendix A to this motion is a chart setting forth in detail, on an element-by-element basis, where GB '433 discloses each claim element.



When Casper raised GB '433 as invalidating prior art during the preliminary injunction phase, Plaintiffs largely conceded that the reference discloses the asserted claims, identifying only two claim elements allegedly missing from the disclosure. Both of Plaintiffs' arguments are demonstrably wrong.

#### 1. GB '433 Discloses Inserts "Affixed" in the Channels

Plaintiffs argue that the spring inserts disclosed in GB '433 are not "affixed" within the channel. Pls. PI Reply Br. (D.I. 51) at 19. Plaintiffs are wrong—GB '433 clearly and explicitly

6

discloses that the inserts are affixed within the channels. Specifically, GB '433 discloses that the inserts are affixed within the channel because a padding layer is glued above the channels (holding the inserts inside), and then a cloth layer surrounds the mattress and covers the edges of the channel. SOF ¶ 4 (quoting GB '433).

Plaintiffs' contention that the inserts GB '433 discloses are not "affixed" because the reference states that they are "put" into and "lie" in the channels is utterly meritless. *See* Pls. PI Reply Br. (D.I. 51) at 19. Plaintiffs' own asserted patent explicitly states that inserts may be affixed within a channel merely by being "placed" in the channel and then "held in the channel" by additional covering materials:

> [T]he ***insert 20 may be merely placed within the channel*** 19 without attachment to the interior thereof, ***held in the channel*** 19 either ***by a customary cloth-type mattress cover*** placed over the mattress 10 during manufacture, ***or by a layer of additional material which might be added on top of the channel surface*** and cover the entire channel surface or that portion of the channel surface surrounding and including the channel 19.

'763 patent (D.I. 1-1) at 3:44–53 (emphases added). Therefore, the prior art GB '433 application discloses inserts that are "affixed" exactly as Plaintiffs' own patent teaches. Moreover, at his deposition, Mr. Gladney—the sole named inventor and Plaintiffs' 30(b)(6) witness—confirmed that one way of affixing an insert in a channel would be to "lay the insert into the foam and then secure your next layer"—*exactly* what GB '433 discloses. SOF ¶ 5 (Gladney testimony). Moreover, to the extent GB '433 did not disclose inserts "affixed" (as it clearly does), it would have been obvious to do so. *See* SOF ¶ 6 (Kuchel report).

### 2. GB '433 Discloses Inserts that "Reinforce" the Body

Plaintiffs also argue that the prior art GB '433 application does not disclose that each spring insert "reinforc[es] the body." Pls. PI Reply Br. (D.I. 51) at 20. This argument, too, is flat wrong. In fact, Plaintiffs' contention to this Court is contradicted by their own patent and logic itself. Plaintiffs' asserted patent specifically discloses springs as "reinforcing" a foam mattress. '763

7

patent (D.I. 1-1) at 1:56, 3:26–27; *see also id.* at 3:20–24. And just like the asserted patent, GB '433 specifically teaches that the combination of the "spring elements" and the "channels in the foam" "act[s] as an additional reinforcement due to the different elastic properties of the springs and the foam web material." SOF ¶ 7 (quoting GB '433). And, as a matter of logic, a person of ordinary skill in the art would understand that springs in a channel in a body would reinforce the body. SOF ¶ 8 (Kuchel Report). Moreover, even if GB '433 did not disclose each insert "reinforcing the body" (as it clearly does), it would have been obvious to include this feature. SOF ¶ 6 (Kuchel Report).

\*   \*   \*

Thus, there can be no genuine dispute that GB '433 discloses all of the elements of the asserted product claims, or at a very minimum renders obvious the claims as a whole. Summary judgment of invalidity of the product claims based on GB '433 is therefore appropriate.

### B. Regan Anticipates and/or Renders Obvious All Asserted Product Claims Under Plaintiffs Interpretation of the Claims

The Regan patent also anticipates the asserted product claims, because it clearly discloses each and every limitation of the claims, as Plaintiffs have applied them.[4] Regan, which was published in 1979, describes a mattress with channels into which "at least two sets of transversely extending ribs" (*i.e.*, inserts) are inserted, each of which is "less compressible than the material of the mattress" (*i.e.*, firmer than the surrounding foam body), thus providing support to the mattress. SOF ¶ 9 (quoting Regan). As shown below, the inserts (red) are affixed in channels within the

---

[4] As explained in Casper's co-pending motion for summary judgment of non-infringement, Plaintiffs are legally precluded from asserting that their claims cover channels on an internal surface of a multi-layer mattress. But, to the extent that the interior channels in the Casper Wave are deemed to be within the scope of Plaintiffs' patent, Regan would invalidate the asserted product claims. "A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

surface of the layers of the mattress. These ribs are "positioned within the mattress 10 to correspond to the areas of greatest weight of a user." SOF ¶ 10 (quoting Regan). Included as Appendix B to this motion is a chart setting for in detail, on an element-by-element basis, where Regan discloses each claim element.



As with GB '433, Casper raised Regan as invalidating prior art at the preliminary injunction stage. Here too, Plaintiffs' only arguments against invalidity are wholly meritless and, indeed, contrary to the disclosure of Regan itself.

    **1.**  **Regan Discloses Inserts "Affixed" in the Channels**

Plaintiffs argue that Regan does not disclose that the inserts are "affixed." Pls. PI Reply Br. (D.I. 51) at 20. This is flat wrong. As is clear from a simple reading of the Regan patent, the inserts are affixed due to the fact that they are sandwiched between two foam layers that themselves are glued together. SOF ¶ 11 (Kuchel Report). It would be hard to envision inserts affixed more strongly than the ribs in Regan. Moreover, in connection with an alternative embodiment, Regan teaches that inserts ("plates") "may be glued or otherwise attached (as by tying together) to the surface" of each mattress layer. SOF ¶ 12 (quoting Regan). Plaintiffs' naked assertion that the inserts are not affixed is thus contrary to everything in Regan, and not a genuine dispute of fact. Moreover, even if Regan did not disclose affixing the inserts (as it does explicitly), Regan would still invalidate because it would have been obvious to affix the inserts disclosed by Regan into the

9

channels, and thus the asserted claims would have been obvious over Regan. SOF ¶ 13 (Kuchel Report).

### 2. Regan Discloses Inserts that "Reinforce" the Body

Plaintiffs also argue that there is no evidence that the inserts disclosed in Regan "reinforc[e]" the body. Pls. PI Reply Br. (D.I. 51) at 21. This too is wrong and misrepresents the disclosure of the Regan patent. Regan states explicitly that the inserts are "of relatively low compressibility" (*i.e.*, firmer relative to the mattress) "to decreas[e] the overall compressibility of the mattress at those points where the ribs are located" (*i.e.*, to make the mattress firmer in the places where the ribs are located). SOF ¶ 14 (quoting Regan). In the multi-layer embodiment, Regan teaches that the inserts can be "less compressible" (*i.e.*, firmer) than both the upper and lower layers, thus reinforcing both layers. SOF ¶ 15 (quoting Regan).[5] But again, even if Regan did not disclose each insert "reinforcing the body" (as it explicitly does), it would have been obvious to include this feature. SOF ¶ 16 (Kuchel Report).

\*   \*   \*

Thus, there can be no genuine dispute that Regan discloses all of the elements of the asserted product claims or renders obvious the claims as a whole. Summary judgment of invalidity of the product claims based on Regan is therefore appropriate.

### C. Antinori Anticipates and/or Renders Obvious All Asserted Product Claims Under Plaintiffs' Interpretation of the Claims

As with Regan, Antinori anticipates the asserted product claims under Plaintiffs' claim interpretation. Specifically, Antinori describes a mattress with multiple layers, with "grooves,

---

[5] Regan teaches that the inserts are *always* "less compressible than the upper layer 36," which is sufficient to anticipate the asserted claims because upper layer 36 is a "body" on its own, under Plaintiffs' claim reading. SOF ¶ 15 (quoting Regan). In addition, Regan states that "[t]he lower layer 30 and the upper layer 36 may be of the same resilience." SOF ¶ 15 (quoting Regan). In that instance, the inserts would be less compressible than both layers, and thus reinforce either layer into which they are affixed.

10

channels or recesses" cut into the layers, and "inserts . . . placed in one or more of the recesses located at the central or medial portions of the layer." SOF ¶ 17 (quoting Antinori). This "firmer insert 40 affords desired firmness in the postural region of a person P (FIG. 4) lying upon the completed mattress." SOF ¶ 18 (quoting Antinori). Included as Appendix C to this motion is a chart setting for in detail, on an element-by-element basis, where Antinori discloses each claim element.



**Excerpt of Fig. 3 of Antinori**        **Excerpt of Fig. 4 of Antinori**

As with GB '433 and Regan, Casper raised Antinori as invalidating prior art at the preliminary injunction stage, and the rebuttal arguments Plaintiffs made are contradicted by the reference itself.

### 1.   Antinori Discloses Inserts within "Channels"

Plaintiffs argue that Antinori discloses inserts only in "recesses"—not in "channels." Pls. PI Reply Br. (D.I. 51) at 22. Plaintiffs' argument is pure misdirection, and misrepresents the actual disclosure of the Antinori patent, which explicitly discloses affixing inserts in "channels," not merely "recesses." While Plaintiffs argue that "Antinori expressly teaches the cutting of 'grooves, channels or recesses' in a foam layer, but only discloses placement of an insert in a 'recess,'" that is simply not true. Antinori discloses affixing inserts into the cutouts labeled 11a and 24a in Figure 4, and expressly states that cutouts 11a and 24a may be "*channels*." SOF ¶ 19 (quoting Antinori) at 4:10 (disclosing cutout 11a as alternatively a "groove, channel or recess"); *id*. at 4:12–14 (disclosing cutout 24a and others as alternatively "channels, slots or recesses"); *id*. at 4:18–23 (disclosing affixing an "insert 40" in cutouts 11a and 24a). Antinori therefore expressly discloses

11

inserts in "channels." Moreover, to the extent Antinori did not disclose inserts within "channels" (as it clearly does), it would have been obvious to do so. SOF ¶ 20 (Kuchel Report).

### 2. Antinori Discloses an Insert "Affixed" in a Channel

Plaintiffs argue that the inserts in Antinori are not "affixed" because they are merely "placed" or "inserted" into the channel. Pls. PI Reply Br. (D.I. 51) at 22. This, again, is flat wrong. Antinori expressly teaches that the inserts are glued within the layer. SOF ¶ 21 ("The insert 40 is inserted in the recess 24a of the layer portion 20b *after the application of adhesive* to either or both of the opposing surfaces . . . .") (emphasis added). Thus, Antinori discloses that the inserts are "affixed" exactly as the asserted claims require. Moreover, to the extent Antinori did not disclose inserts "affixed" within channels (as it clearly does), it would have been obvious to do so. SOF ¶ 22 (Kuchel Report).

### 3. Antinori Discloses an Insert Affixed "Within" a Channel

Plaintiffs argue that Antinori does not disclose an insert affixed "within" a channel because the insert extends above the surface of the layer. Pls. PI Reply Br. (D.I. 51) at 21. This is wrong for several reasons. For example, Plaintiffs interpret "within" to mean that the insert must be entirely inside of the channel. But the Court expressly rejected this interpretation of the claims during claim construction, applying instead the plain and ordinary meaning of the claims. CC Order (D.I. 81) at 1. Furthermore, even if the inserts must be entirely inside the channel, Antinori discloses this. For example, claims 4 through 6 of Antinori teach forming a recess or channel in only one layer, such that the insert would be entirely inside of the recess. SOF ¶ 23 (quoting Antinori); *see also* SOF ¶ 24 (Kuchel Report).[6] Antinori therefore discloses affixing an insert "within" a channel, as the claims recite. Moreover, to the extent Antinori did not disclose inserts

---

[6] For the same reasons that Antinori's inserts are "within" a channel, they are "substantially flush" with the top surface of the body.

affixed "within" a channel (as it clearly does), it would have been obvious to do so. SOF ¶ 25 (Kuchel Report).

### 4. Antinori Discloses a "Plurality of Inserts"

Finally, Plaintiffs argue that Antinori does not teach a "plurality of inserts," and that when Antinori refers to multiple inserts, it is referring to an embodiment in which two mattresses are assembled at the same time. Pls. PI Reply Br. (D.I. 51) at 22. This argument completely misstates Antinori. Indeed, Antinori's description of Figure 4 directly refutes this assertion: "FIG. 4 is an enlarged cross-sectional view through a multi-ply mattress which further includes *one or more inserts placed in the central or medial recesses* prior to sandwiching and adhesively bonding the 24 ILD value layer portion to the 38 ILD value layer portion . . . ." SOF ¶ 26 (quoting Antinori) (emphasis added). Thus, Antinori describes a single mattress with multiple recesses (*i.e.*, channels) and multiple inserts in the medial section. Moreover, to the extent Antinori did not include a "plurality of inserts" (as it clearly does), it would have been obvious to do so. *See* SOF ¶ 20 (Kuchel Report).

\* \* \*

Thus, there can be no genuine dispute that Antinori discloses all of the elements of the asserted product claims or, at a minimum, renders obvious the claims as a whole. Summary judgment of invalidity of the product claims based on Antinori is therefore appropriate.

## V. Conclusion

Because there are no genuine factual disputes regarding whether the prior art discloses each and every element of the asserted product claims, claims 1 and 4–7 of the '763 patent are invalid, and summary judgment with respect to those claims should be granted.

Dated: May 18, 2018 /s/ Katherine Q. Dominguez

GIBSON, DUNN & CRUTCHER, LLP

Josh A. Krevitt
email: jkrevitt@gibsondunn.com
Katherine Q. Dominguez
email: kdominguez@gibsondunn.com
200 Park Avenue, 48th Floor
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Stuart M. Rosenberg *(Pro Hac Vice)*
email: srosenberg@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 849-5389
Facsimile: (650) 849-5089

Jordan Bekier *(Pro Hac Vice)*
email: jbekier@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7736
Facsimile: (213) 229-6726

Nathan Curtis *(Pro Hac Vice)*
email: ncurtis@gibsondunn.com
2100 McKinney Ave, Ste. 1100
Dallas, TX 75201
Telephone: (214) 698-3423
Facsimile: (214) 571-2961

*Attorneys for Defendant Casper Sleep Inc.*

**CERTICATE OF SERVICE**

    I certify that the foregoing document was electronically filed with the Clerk of the Court on May 18, 2018, via the Court's CM/ECF system and has been served on all counsel of record who have consented to electronic service.

Dated: May 18, 2018                  */s/ Katherine Q. Dominguez*
                                                         Katherine Q. Dominguez