## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

SERTA SIMMONS BEDDING, LLC and
DREAMWELL, LTD.

Plaintiffs,

v.

CASPER SLEEP INC.

Defendant.

**CIVIL ACTION NO. 1:17-cv-07468**

## DEFENDANT CASPER SLEEP INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OR INVALIDITY OF THE ASSERTED METHOD CLAIMS

## TABLE OF CONTENTS

**Page**

I.    Introduction ................................................................................................................ 1

II.   Legal Standards .......................................................................................................... 3

    A.    Summary Judgment of Non-Infringement ........................................................ 3

        1.    Literal Infringement ............................................................................... 4

        2.    Infringement Under the Doctrine of Equivalents .................................... 5

    B.    Summary Judgment of Invalidity ...................................................................... 6

III.  Argument .................................................................................................................... 7

    A.    Casper Does Not Infringe the Asserted Method-of-Manufacturing Claims .................. 8

        1.    The Method-of-Manufacturing the Wave Does Not Literally Infringe ................ 8

        2.    Plaintiffs Are Legally Precluded from Relying on the Doctrine of Equivalents ........................................................................................... 11

    B.    The Asserted Method-of-Manufacturing Claims Are Invalid to the Extent Plaintiffs Continue to Assert Infringement Against the Wave ...................... 13

IV.   Conclusion ............................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*,
    808 F.3d 1313 (Fed. Cir. 2015)..................................................................................4

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
    811 F.3d 1334 (Fed. Cir. 2016)............................................................................5, 12

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
    239 F.3d 1343 (Fed. Cir. 2001)..................................................................................3

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)....................................................................................................3

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)....................................................................................................3

*Enzo Biochem Inc. v. Applera Corp.*,
    702 F. App'x 971 (Fed. Cir. 2017) .............................................................................5

*In re Fenofibrate Patent Litig.*,
    910 F. Supp. 2d 708 (S.D.N.Y. 2012)........................................................................4

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    344 F.3d 1359 (Fed. Cir. 2003)..........................................................................5, 6, 12

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    493 F.3d 1368 (Fed. Cir. 2007)..................................................................................6

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)..........................................................................................5, 6, 12

*Gen. Mills, Inc. v. Hunt-Wesson, Inc.*,
    103 F.3d 978 (Fed. Cir. 1997)....................................................................................3

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
    523 F.3d 1304 (Fed. Cir. 2008)...............................................................................5, 6

*Jonsson v. Stanley Works*,
    903 F.2d 812 (Fed. Cir. 1990)..................................................................................12

*King Pharm., Inc. v. Eon Labs, Inc.*,
    616 F.3d 1267 (Fed. Cir. 2010)..................................................................................7

*KSR Int'l Co. v. Teleflex, Inc.*,
    127 S. Ct. 1727 (2007)................................................................................................7

*Laitram Corp. v. Rexnord, Inc.*,
    939 F.2d 1533 (Fed. Cir. 1991)..................................................................................4

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lantech, Inc. v. Keip Mach. Co.*,
    32 F.3d 542 (Fed. Cir. 1994).............................................................................4

*Meds. Co. v. Mylan, Inc.*
    853 F.3d 1296 (Fed. Cir. 2017)........................................................................3

*Monsanto Co. v. Syngenta Seeds, Inc.*,
    503 F.3d 1352 (Fed. Cir. 2007).......................................................................11

*Newell Cos., Inc. v. Kenney Mfg. Co.*,
    864 F.2d 757 (Fed. Cir. 1988)..........................................................................7

*In re Paulsen*,
    30 F.3d 1475 (Fed. Cir. 1994)..........................................................................6

*Phonometrics, Inc. v. N. Telecom Inc.*,
    133 F.3d 1459 (Fed. Cir. 1998)........................................................................4

*Searfoss v. Pioneer Consol. Corp.*,
    374 F.3d 1142 (Fed. Cir. 2004)........................................................................4

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*,
    No. 11-cv-5379, 2012 WL 1223928 (S.D.N.Y. Apr. 11, 2012), *aff'd*,
    488 F. App'x 471 (Fed. Cir. 2013) ..................................................................3

*Spectrum Pharm., Inc. v. Sandoz, Inc.*,
    802 F.3d 1326 (Fed. Cir. 2016)....................................................................6, 7

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013)........................................................................7

*Thought, Inc. v. Oracle Corp.*,
    698 F. App'x 1028 (Fed. Cir. 2017) ................................................................3

*Townsend Eng'g Co. v. Hitec Co.*,
    829 F.2d 1086 (Fed. Cir. 1987).......................................................................12

*VocalTag Ltd. v. Agis Automatisering B.V.*,
    659 F. App'x 616 (Fed. Cir. 2016) ..................................................................3

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)........................................................................................5, 6

**Statutes**

35 U.S.C. § 112(d) ...........................................................................................11

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Other Authorities**

CC Order (D.I. 118, Ex. A)...................................................................................2, 7, 9

**Rules**

Fed. R. Civ. P. 56(a) ...............................................................................................3

## TABLE OF ABBREVIATIONS

| Abbreviation | Document |
| --- | --- |
| '763 Patent | U.S. Patent No. 7,424,763 (filed May 1, 2006) (issued Sep. 16, 2008) (D.I. 10-3) |
| '173 Patent | U.S. Patent No. 7,036,173 (filed Oct. 17, 2001) (issued May 2, 2006) (D.I. 10-4) |
| '935 Patent | U.S. Patent No. 8,918,935 (filed July 12, 2012) (issued Dec. 30, 2014) (D.I. 10-5) |
| 11/13/06 Amendment | November 13, 2006 Amendment from the prosecution file of U.S. Patent Appl. No. 11/415,816 (matured to U.S. Patent No. 7,424,763) (D.I. 44-12) |
| 3/9/04 Office Action | March 9, 2004 Office Action from the prosecution file of U.S. Patent Appl. No. 10/274,441 (matured to U.S. Patent No. 7,036,173) (D.I. 44-3) |
| 5/1/06 Application | May 1, 2006 Application from the prosecution file of U.S. Patent Appl. No. 11/415,816 (matured to U.S. Patent No. 7,424,763) (D.I. 72-1) |
| 8/11/04 Amendment | August 11, 2004 Amendment from the prosecution file of U.S. Patent Appl. No. 10,274,441 (matured to U.S. Patent No. 7,036,173) (D.I. 44-5) |
| 8/7/06 Office Action | August 7, 2006 Office Action from the prosecution file of U.S. Patent Appl. No. 11/415,816 (matured to U.S. Patent No. 7,424,763) (D.I. 44-8) |
| 1/30/2018 Ltr. | January 30, 2018 letter from Josh Krevitt (counsel for Casper) to Paul Schoenhard (counsel for Plaintiffs) (D.I. 87-1) |
| 2/1/2018 Ltr. | February 1, 2018 letter from Paul Schoenhard (counsel for Plaintiffs) to Josh Krevitt (counsel for Casper) (D.I. 87-2) |
| 2/15/2018 Ltr. | February 15, 2018 letter from Josh Krevitt (counsel for Casper) to Paul Schoenhard (counsel for Plaintiffs) (D.I. 87-3) |
| Amended CC Order | Amended Claim Construction Order (D.I. 118, Ex. A) |
| Clift Dep. Tr. | Transcript for the November 2, 2017 deposition of Matthew Clift (D.I. 44-20) |

| Abbreviation | Document |
|---|---|
| Clift Rep't | Opening Expert Report of Matthew D. Clift on Behalf of Plaintiffs Serta Simmons Bedding, LLC and Dreamwell, Ltd. (Ex. C) |
| Ex. | Exhibit to the Declaration of Christine L. Ranney in Support of Casper Sleep Inc.'s Motions for Summary Judgment, filed concurrently herewith |
| Kuchel Rep't | Expert Report of Bernhard Kuchel Regarding Validity and Materiality (Ex. F) |
| Markman Hearing Tr. | Transcript for the January 25, 2018 Claim Construction hearing (D.I. 94) |
| Pls.' CC Br. | Plaintiffs Serta Simmons Bedding, LLC and Dreamwell, Ltd.'s Opening Claim Construction Brief (D.I. 60-0) |
| Pls.' PI Br. | Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction (D.I. 10-1) |
| Pls.' PI Reply | Plaintiffs' Reply in Further Support of Plaintiffs' Motion for Preliminary Injunction (D.I. 51) |
| Regan | U.S. Patent No. 4,161,045 (Filed Dec. 19, 1977) (Issued Jul. 19, 1979) (produced at Bates CAS-00000255-CAS-00000260) (D.I. 44-38) |

**TABLE OF EXHIBITS**[1]

| Exhibit | Document |
| --- | --- |
|  | Declaration of Christine L. Ranney in Support of Casper Sleep Inc.'s Motions for Summary Judgment, filed concurrently herewith |
| C | Excerpts of the Opening Expert Report of Matthew D. Clift on Behalf of Plaintiffs Serta Simmons Bedding, LLC and Dreamwell, Ltd. |
| F | Expert Report of Bernhard Kuchel Regarding Validity and Materiality |

**TABLE OF APPENDICES**

| Appendix | Title |
| --- | --- |
| A | '763 Patent Claim Chart |
| B | '173 Patent Claim Chart |
| C | '935 Patent Claim Chart |

---

[1]  Pursuant to the Court's Individual Rules of Practice, ¶ 2.C.

Defendant Casper Sleep Inc. ("Casper") respectfully seeks summary judgment that Casper does not infringe any of the asserted method-of-manufacturing claims, or, in the alternative, that the asserted method-of-manufacturing claims are invalid over the prior art.[2]

## I.    Introduction

Casper does not infringe any of the asserted method-of-manufacturing claims.  Those claims require creating a channel in a particular way, and it is beyond dispute that Casper does not create channels in the claimed way.  Specifically, the claims all require that channels be formed by assembling foam pieces.  Casper never does that.  No channels in any Casper mattress are formed by assembling foam pieces.  To the contrary, all of the channels are formed by cutting.  Because the channels in the accused mattress are not formed by assembling foam pieces—as every method claim requires—there can be no infringement as a matter of law, and summary judgment should be entered.

The asserted patents describe three different ways to form a channel in a foam mattress: (1) cutting the foam to form a channel, (2) molding the channel into the foam when the foam itself is manufactured, or (3) assembling difference pieces of foam so that a channel is formed among the pieces.  Although Plaintiffs attempted multiple times to obtain claims that would cover any of the three methods of forming a channel (including by cutting alone), the Patent Office rejected those claims as obvious, and required Plaintiffs to amend their claims to be more narrow.  As a result—and as this Court ruled in its claim construction—the asserted method claims all require using, at a minimum, the third method described in the patents:  forming a channel *by assembling*

---

[2]    The asserted method-of-manufacturing claims are:  '763 patent (D.I. 10-3) claims 8, 9, 11, and 12; '173 patent (D.I. 10-4) claims 5, 6, and 8; '935 patent (D.I. 10-5) claims 10 and 13.  Casper likewise does not infringe any of the asserted product claims and those claims are invalid, as explained in Casper's separate motions for summary judgment regarding the asserted product claims.

*pieces of foam* together.  *See, e.g.*, Amended CC Order (D.I. 118, Ex. A) (holding that the asserted method claims of the '763 and '935 patents require "***assembling the [plurality of] rectangular foam pieces* to form the body and *to form a channel* in the region**") (emphases added); '173 Patent (D.I. 10-4) at Cl. 5 (expressly reciting that "***forming the channel comprises assembling a plurality of rectangular foam pieces***…") (emphasis added).

By contrast, it is undisputed that the only channels in the accused Casper Wave mattress are formed solely by cutting foam with a saw, and *not* by assembling foam pieces—that is, Casper uses precisely the method for which the Patent Office refused to grant Plaintiffs' claims.  Casper has never formed any channel in the Wave by assembling foam pieces, which is what the issued claims require.  Therefore Casper does not literally infringe any of the method claims.

In addition, Plaintiffs are legally precluded from asserting infringement under the doctrine of equivalents, and thus there is no infringement of any kind.  Plaintiffs know that Casper does not infringe, and that they lack any good faith basis to continue to assert these claims, but Plaintiffs have refused to drop them.[3]  Because there are no material facts in dispute and no infringement of the method claims, Casper respectfully asks the Court to enter summary judgment of non-infringement.

In the alternative, if the Court disagrees and holds that Plaintiffs' infringement allegations against the Casper Wave are not plainly outside the scope of the asserted method claims, then Casper respectfully asks the Court to enter summary judgment of invalidity of these claims.  If the claims are understood broadly enough to allow Plaintiffs to accuse the Casper Wave, then there is no dispute that the claims are so broad that they read squarely on the prior art—including

---

[3]  *See* correspondence regarding Plaintiffs' continued assertion of claims (1/30/2018 Ltr. (D.I. 87-1); 2/1/2018 Ltr. (D.I. 87-2); 2/15/2018 Ltr. (D.I. 87-3)).

specifically U.S. Patent No. 4,161,045 to John Regan—and are therefore invalid as a matter of law.  Indeed, Plaintiffs cannot continue to assert these method-of-manufacturing claims against Casper without running head-on into summary judgment of invalidity.  "A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement." *Amazon.com, Inc. v. Barnesandnoble.com, Inc*., 239 F.3d 1343, 1351 (Fed. Cir. 2001).  As shown below, the asserted method claims are either not infringed or they are invalid, and either way summary judgment is warranted for Casper.

## II.    Legal Standards

### A.    Summary Judgment of Non-Infringement

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "complete failure of proof concerning an essential element of the nonmoving party's case" renders summary judgment proper in favor of the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In patent cases, summary judgment of non-infringement is warranted where—as in this case—"the parties do not dispute any relevant facts regarding the accused product."  *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997) (affirming summary judgment of no infringement where parties did not dispute the physical characteristics of the accused product); *see also, e.g.*, *Thought, Inc. v. Oracle Corp.*, 698 F. App'x 1028, 1032 (Fed. Cir. 2017) (affirming summary judgment of non-infringement because accused product did not meet one of the claim limitations); *Meds. Co. v. Mylan, Inc.* 853 F.3d 1296, 1310 (Fed. Cir. 2017) (similar); *VocalTag Ltd. v. Agis Automatisering B.V.*, 659 F. App'x 616, 622 (Fed. Cir. 2016) (similar); *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, No. 11-cv-5379, 2012 WL 1223928 (S.D.N.Y. Apr. 11,

2012), *aff'd*, 488 F. App'x 471 (Fed. Cir. 2013) (granting summary judgment of non-infringement).

Analysis of infringement is a two-step process. First, "the trial court determines the scope and meaning of the asserted claims." *Searfoss v. Pioneer Consol. Corp.*, 374 F.3d 1142, 1148 (Fed. Cir. 2004). Second, "the claims as construed by the court are compared limitation by limitation to the features of the allegedly infringing device." *Id.*

A plaintiff asserting patent infringement bears the burden to prove that the defendant satisfies *each and every* limitation of each asserted patent claim. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). Thus, summary judgment of non-infringement is warranted if even *one* claim element is absent from the accused product. *Id.* ("[T]he failure to meet a single limitation is sufficient to negate infringement of the claim."); *Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1467 (Fed. Cir. 1998) (affirming summary judgment of non-infringement based on absence of one claim limitation).

### 1.    Literal Infringement

To literally infringe a patent claim, the accused product or process must satisfy each and every limitation of the claim (as construed) "*exactly*"—"any deviation from the claim preclud[es] a finding of infringement." *In re Fenofibrate Patent Litig.*, 910 F. Supp. 2d 708, 711 (S.D.N.Y. 2012) (emphasis in original) (quoting *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 547 (Fed. Cir. 1994)); *see also Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319 (Fed. Cir. 2015) ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly.") (citation omitted). If the accused product does not satisfy each and every claim element exactly as set forth in the claims, there can be no literal infringement.

2. **Infringement Under the Doctrine of Equivalents**

In certain limited circumstances, an accused "product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). This is known as the doctrine of equivalents.  Infringement under the doctrine of equivalents requires that the alleged "equivalent" in the accused product "differs from the claimed limitation only insubstantially." *Enzo Biochem Inc. v. Applera Corp.*, 702 F. App'x 971, 976 (Fed. Cir. 2017).

The doctrine of equivalents is not available as a matter of law in certain circumstances. First, the doctrine cannot be applied if doing so "would entirely vitiate a particular claim element." *Warner-Jenkinson*, 520 U.S. at 39 n.8.  The doctrine of equivalents improperly "vitiate[s]" a claim limitation if it would render that limitation "inconsequential or ineffective." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016) (affirming summary judgment of no infringement under the doctrine of equivalents).

Second, under Supreme Court and Federal Circuit law, with very limited exceptions not relevant here, the doctrine of equivalents is *legally unavailable* for any claim elements that were added during prosecution to overcome a rejection.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 727 (2002) ("*Festo VIII*"); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1365, 1367 (Fed. Cir. 2003) (en banc) ("*Festo X*"); *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1310–12 (Fed. Cir. 2008).  This limitation, known as prosecution history estoppel, prevents patentees from using the doctrine of equivalents to recapture subject matter surrendered during prosecution.  As the Supreme Court has explained, when a patentee "originally claimed the subject matter alleged to infringe but then narrowed the

claim in response to the rejection," that means the patentee cannot allege infringement under the doctrine of equivalents—*i.e.*, "he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent." *Festo VIII*, 535 U.S. at 733–34.[4]

Whether a patentee is precluded from pursuing infringement under the doctrine of equivalents due to claim element vitiation or prosecution history estoppel is a question of law for the Court. *Warner-Jenkinson*, 520 U.S. at 39 n.8; *Festo X*, 344 F.3d at 1366–67.

## B. Summary Judgment of Invalidity

An invention is anticipated under 35 U.S.C. § 102(b) if it "was . . . described in a printed publication in this . . . country . . . more than one year prior to the date of application for patent in the United States." Anticipation "requires that each and every limitation of the claimed invention be disclosed in a single prior art reference. In addition, the reference must be enabling and describe the applicant's claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention." *In re Paulsen*, 30 F.3d 1475, 1479 (Fed. Cir. 1994).

Under 35 U.S.C. § 103, "[a] patent claim is invalid as obvious if an alleged infringer proves that the differences between the claims and the prior art are such that 'the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.'" *Spectrum Pharm., Inc. v. Sandoz, Inc.*, 802 F.3d 1326, 1333 (Fed. Cir. 2016) (quoting

---

[4] The presumption that a claim amendment legally precludes a patentee from accusing an alleged equivalent can only be overcome in very limited set of circumstances, not present here—namely, where a patentee can prove that "(1) the equivalent was 'unforeseeable at the time of the application,' (2) 'the rationale underlying the amendment [bears] no more than a tangential relation to the equivalent in question,' or (3) that 'some other reason suggest[s] that the patentee could not reasonably be expected to have described the insubstantial substitute in question.'" *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368, 1375 (Fed. Cir. 2007) ("*Festo XIII*"); *Honeywell*, 523 F.3d at 1310–11; *Festo X*, 344 F.3d at 1365, 1368–69.

Section 103); *see also King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1274 (Fed. Cir. 2010). "Obviousness is ultimately a conclusion of law premised on underlying findings of fact, including the scope and content of the prior art, the differences between the claimed invention and the prior art, and the level of ordinary skill in the pertinent art." *Spectrum*, 802 F.3d at 1333 (citations omitted); *see also KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1734, 1746 (2007).

Both anticipation and obviousness are appropriate for resolution at summary judgment. "Although anticipation is a question of fact, a district court may, on summary judgment, invalidate a patent claim as anticipated by a prior art reference if the patentee does not identify a genuine issue of material fact to avoid summary judgment." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1324 (Fed. Cir. 2013). "[W]here the ultimate legal conclusion of obviousness is disputed, but not the underlying facts, there is no issue of fact requiring a trial." *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 763 (Fed. Cir. 1988); *see also KSR*, 127 S. Ct. at 1745–46.

## III.  Argument

Casper does not infringe any of the asserted method claims—either literally or under the doctrine of equivalents—because key elements of each claim are missing from the process by which the Wave is manufactured.  This Court has already completed the first step of the infringement analysis by construing the claims.  *See* Amended CC Order (D.I. 118, Ex. A). Because the undisputed facts demonstrate that Casper does not practice each and every limitation of the asserted method-of-manufacturing claims, Casper is entitled to summary judgment of non-infringement for those claims.

If the Court disagrees and holds that Plaintiffs may continue to assert infringement of these method claims, then the Court should grant summary judgment of invalidity.  If Plaintiffs are permitted to read the claims so broadly as to accuse the manufacture of the Casper Wave of infringing, then these claims will necessarily be invalid as anticipated and/or obvious in light of

U.S. Patent No. 4,161,045 to John Regan, because the prior art Regan patent disclosed and rendered obvious each and every step of the methods that Plaintiffs purport to have patented here.

## A.     Casper Does Not Infringe the Asserted Method-of-Manufacturing Claims

### 1.     The Method-of-Manufacturing the Wave Does Not Literally Infringe

Casper does not infringe the asserted method-of-manufacturing claims as a matter of law. As construed, each of the method-of-manufacturing claims requires forming channels by assembling rectangular foam pieces, as opposed to merely cutting or molding foam. Casper's manufacturing process does not work that way. There are no factual disputes regarding Casper's process, which forms channels only by cutting, and never by assembling foam pieces. Therefore it is beyond dispute that Casper does not infringe.

The specification of the asserted patents describes three ways of forming a channel: (1) cutting foam, (2) molding channels into the foam, or (3) assembling rectangular foam pieces in such a way that channels are formed. *See* '763 Patent (D.I. 10-3) at 5:6–23, 37–43. In prosecuting the patents, Plaintiffs tried multiple times to obtain claims that would cover any of the three methods of forming channels (cutting, assembling or molding). But the examiner rejected each of Plaintiffs' attempts, each time stating that "forming the channels *whether by cutting or molding is* an *obvious* matter of design choice." 3/9/04 Office Action (D.I. 44-3) at 2 (emphases added); *see also* 8/7/06 Office Action (D.I. 44-8) at 4. To overcome the rejections, Plaintiffs amended the claims to require forming a channel using the third method, assembling foam pieces.

Specifically, claim 5 of the '173 patent was amended to require on its face that "*forming the channel comprises assembling a plurality of rectangular foam pieces* into a mattress that includes the channel." '173 Patent (D.I. 10-4) at 6:28–30 (emphasis added). The method-of-manufacturing claims of the '763 and '935 patents were amended to include the same substantive

requirement, though they phrase it slightly differently, reciting "assembling the [plurality of] rectangular foam pieces to form the body having a channel in the region." '763 Patent (D.I. 10-3) at 6:39–40; '935 Patent (D.I. 10-5) at 6:40–41.   During claim construction, the parties hotly disputed whether this latter version of the claim language requires only the *body* to be formed by assembling foam pieces (Plaintiffs' position), or also requires forming the *channel* by assembling foam pieces (Casper's position).   *See, e.g.*, Pls.' CC Br. (D.I. 60-0) at 29.   Recognizing that the claims issued with the requirement of forming a channel by assembling foam pieces because that was the only method the Patent Office found to be non-obvious, the Court resolved the dispute by adopting Casper's construction, requiring "assembling the [plurality of] rectangular foam pieces to form the body ***and to form a channel*** in the region."   Amended CC Order (D.I. 118, Ex. A) (emphasis added); Markman Hearing Tr. (D.I. 94) at 38:4–16, 43:12–20.

Thus, as construed, all of the asserted claims require that *the channels* must be *formed by assembling* foam pieces.   It is not enough that there simply be channels in the finished mattress, nor is it enough that some foam pieces are assembled somewhere in the process of forming the mattress.   Any method of forming a channel that does *not* involve assembling foam pieces—such as by cutting alone—and any accused "assembling" that is not done "to form a channel" cannot satisfy the claims.

Casper is entitled to summary judgment because there is no dispute that the channels in the Wave are formed by cutting alone, never by assembling foam pieces.   As Plaintiffs concede, the accused channels in the Wave are formed when a computerized saw cuts the channels into a block of high-resiliency foam, as depicted for example in the photographs below:



SOF ¶¶ 1–3; *see also, e.g.*, Pls.' PI Br. (D.I. 10-1) at 13; Pls.' Markman Br. (D.I. 60-0) at 12.  The saw cuts through a block of foam to create the channels, and the process results in a layer of foam with channels fully formed—by having been cut into the foam.  The cutting process thus fully forms the accused channels.  SOF ¶¶ 1–3.  After the channels are cut, they are complete.  No other step or action contributes to forming the channels.  SOF ¶¶ 1–3, 8.

After being cut—and fully formed—the completed channels are filled with a polymer gel, which hardens into what Casper refers to as the polymer network (which Plaintiffs accuse of being "inserts" within the meaning of the asserted claims).  SOF ¶ 4.  At this point in the process of manufacturing the Wave, the channels are fully formed and finished and the alleged "inserts" are already in place, but the "foam pieces" that make up the Wave *have not yet been assembled*.  SOF ¶¶ 1–3, 8.  This undisputed fact proves that the channels are *not* made by assembling foam pieces, but rather merely by cutting into foam.

Because Casper never forms a channel by assembling foam pieces, Plaintiffs have no viable claim for infringement.  Plaintiffs attempt to gin up an infringement claim by pointing to a *later* part of the process of making the Wave mattress, when the completed high-resiliency layer (with the accused channels already formed) is glued together with other layers.  SOF ¶ 5 (citing Clift Rep't (Ex. C) ¶¶ 211, 288, 313, 365).  Indeed, this later stage is the very stage of the Wave manufacturing process that Plaintiffs accused as meeting the "assembling" limitations at the preliminary injunction stage.  *See* Pls.' PI Br. (D.I. 10-1) at 14 (element 5.5); *id.* at 16 (element

10.3).  But this later stage of the Wave manufacturing process cannot satisfy the "assembling" limitations because it does not form channels.  All of the asserted claims require the "assembling" of foam pieces to do two things:  (1) form a mattress (or mattress "body"), and (2) *form a channel* within the mattress (or body).  While gluing the layers of the Wave together does create the mattress body (and is the *only* point in the manufacturing process when foam layers are assembled to form the mattress), it indisputably has nothing whatsoever to do with the formation of channels—all of which had been fully formed and filled with inserts before the layers were put together.  SOF ¶¶ 4, 6–7.

In short, there is no dispute that in the Wave manufacturing process, channels are formed solely by cutting foam, not by assembling foam pieces—and the gluing together of the layers *does not form channels*.  Therefore, Casper cannot literally infringe the method-of-manufacture claims.[5]

## 2.    Plaintiffs Are Legally Precluded from Relying on the Doctrine of Equivalents

Plaintiffs are also precluded from applying the doctrine of equivalents to circumvent the "assembling" limitations of the method-of-manufacturing claims.  First, Plaintiffs are precluded by the doctrine of vitiation.  If Plaintiffs were permitted to take these claims, which require forming a channel by "assembling" foam pieces, and assert them against Casper's forming of channels

---

[5]  Plaintiffs may respond that certain dependent claims specify an *additional* limitation "wherein forming the channel further comprises cutting foam out of the body."  '173 Patent (D.I. 10-4) at 6:31–32 (cl. 6); *see also* '763 Patent (D.I. 10-3) at 6:43–44 (cl. 9).  But these claims do not help Plaintiffs, because these claims depend from the claims that explicitly require forming channels by assembling foam pieces.  Thus, by law they incorporate the requirement of forming channels by assembling foam pieces.  *See* 35 U.S.C. § 112(d) ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").  In other words, these dependent claims require the use of *both* assembling and cutting to form channels.  Because Casper does not infringe the independent claims that require assembling to form channels, Casper cannot infringe the dependent claims either.  *See, e.g.*, *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) (affirming summary judgment of non-infringement and explaining that "because [defendant] did not infringe the methods of the independent claims, it could not infringe the methods of the asserted dependent claims").

solely by cutting—*with no assembling involved in the formation of the channel*—that would entirely eviscerate the "assembling" limitations.  Plaintiffs are prohibited from vitiating the "assembly" limitation as a matter of law.  *Akzo Nobel*, 811 F.3d at 1342.

Second, Plaintiffs are barred under the doctrine of prosecution history estoppel.  Plaintiffs are not permitted to assert that cutting channels is equivalent to forming channels by assembling foam pieces, because they amended the claims specifically to add the "assembling" limitation. *Festo VIII*, 535 U.S. at 733–34, 740.  Indeed, Plaintiffs attempted multiple times (in the '173 and '763 prosecutions) to obtain claims that covered forming channels by cutting alone, and each time were rejected over the prior art.  3/9/04 Office Action (D.I. 44-3) at 2; 8/7/06 Office Action (D.I. 44-8) at 4.   Plaintiffs thus knew that forming channels by cutting alone was a potential manufacturing approach and *tried to claim it*, but were rejected.  To win issuance of the claims, Plaintiffs amended the claims to require forming channels by assembling foam pieces.  8/11/04 Amendment (D.I. 44-5) at 2–3; 5/1/06 Application (D.I. 72-1) at 12; 11/13/06 Amendment (D.I. 44-12) at 3, 7.  Thus, Plaintiffs are now legally precluded from applying the doctrine of equivalents to recapture what they surrendered.  *Festo VIII*, 535 U.S. at 733–35; *Festo X*, 344 F.3d at 1365, 1367.  Moreover, the estoppel created by the '173 and '763 amendments precludes application of the doctrine of equivalents for the '935 patent, as well.  *See, e.g.*, *Jonsson v. Stanley Works*, 903 F.2d 812, 818, 821 (Fed. Cir. 1990) (prosecution history estoppel in a related patent precluded availability of doctrine of equivalents for asserted patent).[6]

---

[6]  Plaintiffs are also precluded from relying on the doctrine of equivalents because of arguments they made to the Patent Office in prosecuting all three of the asserted patents.  *Townsend Eng'g Co. v. Hitec Co.*, 829 F.2d 1086, 1090 (Fed. Cir. 1987) ("Prosecution history estoppel applies both to claim amendments to overcome rejections based on prior art, and to arguments submitted to obtain the patent.") (citation omitted).  The Court need not reach the issue of whether Plaintiffs' arguments give rise to prosecution history estoppel, however, because Plaintiffs' amendments alone create an estoppel.  *Festo VIII*, 535 U.S. at 740.

\*     \*     \*

Because there are no factual disputes regarding whether Casper forms channels by assembling foam pieces (it does not), Casper does not infringe the asserted method-of-manufacturing claims, either literally or under the doctrine of equivalents, and summary judgment of non-infringement should be granted.

**B.     The Asserted Method-of-Manufacturing Claims Are Invalid to the Extent Plaintiffs Continue to Assert Infringement Against the Wave**

Alternatively, if the Court does not grant summary judgment of non-infringement, the Court should grant summary judgment of invalidity. That is, if the Court holds that Plaintiffs may continue to assert these claims against the Wave—which, as explained above, is manufactured by stacking together layers of foam that have channels already formed by cutting—then the asserted patents would be invalid in light of U.S. Patent No. 4,161,045 ("Regan"), which discloses and renders obvious each and every step of these claims under Plaintiffs' view of the claims.

Regan—which issued on July 17, 1979—describes "[a] mattress of improved support having . . . top and bottom surfaces . . . with at least two sets of transversely extending ribs" (*i.e.*, inserts). *See* SOF ¶ 9 (quoting Regan (D.I. 44-38) at Issue Date [45], Abstract [57]). These inserts are "less compressible than the material of the mattress," and thus provide targeted support to the mattress. *See id.* In particular, as shown below, one of the preferred mattress embodiments of Regan has a "lower layer 30" (blue), an "upper layer 36" (yellow), and "two sets 14 and 16 of [inserts] 41–44 [red] between the layers 30 and 36." SOF ¶ 10 (quoting Regan (D.I. 44-38) at 3:29–34; Fig. 5 (color added)). These ribs are "positioned within the mattress 10 to correspond to the areas of greatest weight of a user," *i.e.*, to provide targeted support to the mattress. SOF ¶ 11 (quoting Regan (D.I. 44-38) at 2:35–37).



To manufacture this mattress, Regan teaches that channels are formed in the individual layers, and then the ribs (*i.e.*, inserts) are glued or attached (*i.e.*, affixed) within the channels. *See* SOF ¶ 12 (quoting Regan (D.I. 44-38) at 2:35–37; 4:1–4). The two layers are then assembled and glued together. *See* SOF ¶ 13 (quoting Regan (D.I. 44-38) at 3:5–15).[7] That is the exact sequence of steps that Plaintiffs say their patents cover. Included as Appendices A–C to this motion are charts setting forth in detail, on an element-by-element basis, where Regan discloses each claim element of the asserted method claims, as Plaintiffs have interpreted the claims for purposes of their infringement allegations.

Plaintiffs have no non-frivolous argument that Regan fails to anticipate and/or render obvious the asserted method claims. Indeed, Casper raised and Plaintiffs responded to the Regan reference at the preliminary injunction stage, and Plaintiffs were able to muster only two arguments, each of which is untenable on its face:

**Inserts "affixed":** With respect to the asserted claims of the '935 patent, Plaintiffs' *sole defense* against invalidity was to allege that the inserts ("ribs") disclosed in Regan are not "affixed" in a channel. Pls.' PI Reply (D.I. 51) at 24. This is demonstrably false. As Casper's technical expert Mr. Kuchel explains, the inserts are affixed due to the fact that they are sandwiched between

---

[7] For the reasons explained above, the assembly of these two layers in Regan does not form channels any more than the assembly of the layers of the Wave forms channels. But, to the extent Plaintiffs continue to assert infringement against the manufacture of the Wave, Regan discloses *exactly* what Plaintiffs accuse in the manufacture of the Wave. Plaintiffs cannot twist these claims to find infringement by the Wave while at the same time avoiding invalidity based on Regan.

two foam layers that are glued together.  *See* SOF ¶ 14 (quoting Kuchel Rep't (Ex. F) ¶ 96[1.2c] (citing Regan at 3:5–8, which describes the layers "join[ed] . . . as by an adhesive, with at least two sets of less compressible ribs disposed therebetween.")).  Moreover, in connection with an alternative embodiment, Regan teaches explicitly that the inserts ("plates") "may be glued or otherwise attached (as by tying together) to the surface" of each mattress layer.  SOF ¶ 12 (quoting Regan (D.I. 44-38) at 2:35–37, 4:1–4).  Thus, Plaintiffs' naked assertion that the inserts in Regan are not affixed is directly contrary to what Regan actually says and teaches.  And even if Regan did not disclose affixing the inserts (as it does explicitly), Regan would still invalidate because it would have been obvious to affix the inserts disclosed by Regan into the channels, and thus the asserted claims would have been obvious over Regan.  *Id.*; Kuchel Rep't (Ex. F) at ¶¶ 72, 101. Plaintiffs have not identified any evidence to the contrary, and there is none.

*Inserts of "greater firmness" than the body:*  With respect to the '173 patent, Plaintiffs additionally argued that Regan "fails to disclose an insert that is of a 'greater firmness than' the body, as required by Claim 5."  Pls.' PI Reply (D.I. 51) at 24.  This too is demonstrably false. Regan teaches that the inserts are "of relatively low compressibility . . . to decreas[e] the overall compressibility of the mattress at those points where the ribs are located."  *See* SOF ¶ 15 (quoting Regan (D.I. 44-38) at 1:31–43).  In other words, the inserts are firmer than the surrounding foam to provide "enhanced localized support."  *See* SOF ¶ 16 (quoting Regan (D.I. 44-38) at 3:26–28); SOF ¶ 17 (quoting Kuchel Rep't (Ex. F) ¶ 153).[8]  And again, even if Regan did not disclose this

---

[8]  In the multi-layer embodiment, Regan teaches that the inserts are *always* "less compressible than the upper layer 36" (a "body" under Plaintiffs' reading of the claims).  SOF ¶ 16 (quoting Regan (D.I. 44-38) at 3:26–28).  Regan further teaches that "[t]he lower layer 30 and the upper layer 36 may be of the same resilience."  SOF ¶ 18 (quoting Regan (D.I. 44-38) at 3:23–26).  In that instance, the inserts would be less compressible than both layers, and thus would have greater firmness than both layers.

claim limitation (as it does explicitly), Regan would still invalidate because it would have been obvious to use inserts that are firmer than the surrounding firm to provide additional support. Kuchel Rep't (Ex. F) ¶ 101.  That concept was widely known decades before Plaintiffs' alleged invention.  *Id.*  Thus, the asserted claims would still be invalid under Plaintiffs' own view of their scope.

With respect to the method claims of the '763 patent, which were not asserted at the preliminary injunction stage, Plaintiffs have never identified even a single element that they allege to be missing from Regan under their view of the claims' scope.  Nor is there any such element, because Regan discloses each and every element, as shown in the attached appendices.

Thus, if the Court allows Plaintiffs to continue asserting their method-of-manufacture claims against the Casper Wave, there is no genuine dispute that those claims are invalid in light of Regan, and the Court should grant summary judgment of invalidity.

## IV.    Conclusion

For the foregoing reasons, the Court should grant summary judgment that Casper does not infringe the asserted method-of-manufacturing claims, or in the alternative should grant summary judgment that the asserted method-of-manufacture claims are invalid.

Dated:  May 18, 2018                          /s/ Katherine Q. Dominguez

                                              GIBSON, DUNN & CRUTCHER, LLP

                                              Josh A. Krevitt
                                              email: jkrevitt@gibsondunn.com
                                              Katherine Q. Dominguez
                                              email: kdominguez@gibsondunn.com
                                              200 Park Avenue, 48th Floor
                                              New York, NY 10166
                                              Telephone: (212) 351-4000
                                              Facsimile: (212).351-4035

                                              Stuart M. Rosenberg *(Pro Hac Vice)*
                                              email: srosenberg@gibsondunn.com
                                              1881 Page Mill Road
                                              Palo Alto, CA 94304
                                              Telephone: (650) 849-5389
                                              Facsimile: (650) 849-5089

                                              Jordan Bekier  *(Pro Hac Vice)*
                                              email: jbekier@gibsondunn.com
                                              333 South Grand Avenue
                                              Los Angeles, CA 90071
                                              Telephone: (213) 229-7736
                                              Facsimile: (213) 229-6726

                                              Nathan Curtis *(Pro Hac Vice)*
                                              email: ncurtis@gibsondunn.com
                                              2100 McKinney Ave, Ste. 1100
                                              Dallas, TX 75201
                                              Telephone: (214) 698-3423
                                              Facsimile: (214) 571-2961

                                              *Attorneys for Defendant Casper Sleep Inc.*

## CERTICATE OF SERVICE

I certify that the foregoing document was electronically filed with the Clerk of the Court on May 18, 2018, via the Court's CM/ECF system and has been served on all counsel of record who have consented to electronic service.

Dated:  May 18, 2018                              /s/ *Katherine Q. Dominguez*

Katherine Q. Dominguez